James P. Murphy, WSBA #18125
Brian C. Armstrong, WSBA #31974
Murphy Armstrong Firm LLP
719 Second Ave., Suite 701
Seattle, WA 98104
Telephone: (206) 985-9770
jpm@maflegal.com

Michael J. Kleffner (*pro hac vice*)
Jennifer J. Artman (*pro hac vice*)
SHOOK, HARDY, & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO, 64108
Tel: 816.474.6550 | Fax: 816.421.5547
mkleffner@shb.com
jartman@shb.com

*Attorneys for Defendant*
DAIMLER TRUCK NORTH AMERICA LLC ("DTNA")

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STEPHEN BURGESS, individually, and BRUCE WOLF, as the court-appointed Personal Representative of the Estate of DEBORA M. BURGESS and on behalf of all statutory wrongful death beneficiaries,<br><br>Plaintiffs,<br><br>v.<br><br>DAIMLER TRUCK NORTH AMERICA, a Delaware limited liability company; HTS LOGISTICS, INC., an Illinois corporation; SAHIL TAYA and JANE DOE TAYA, husband and wife; and XYZ Corporations (1-5).<br><br>Defendants. | Case No. 1:23-CV-03054<br><br>**DAIMLER TRUCK NORTH AMERICA LLC'S DAUBERT MOTION TO EXCLUDE CERTAIN OPINIONS AND TESTIMONY OF SHAWN HARRINGTON**<br><br>April 24, 2025<br><br>With Oral Argument: 10:00 a.m. |

DTNA's *DAUBERT* MOTION TO EXCLUDE CERTAIN OPINIONS AND TESTIMONY OF SHAWN HARRINGTON

I.  **Introduction**

Shawn Harrington is Plaintiffs' accident reconstruction expert. Mr. Harrington conducted "case-specific testing" as part of his work, and that testing is at issue in this motion. *See* Harrington Report, at 102, ¶ 4, attached at Exhibit 1.[1] Specifically, Mr. Harrington tested a Freightliner Cascadia equipped with Detroit Assurance 5.0 ("DA5") and, based on that testing, concluded that "Mr. Taya would have completely avoided contacting Ms. Burgess due to automatic emergency braking" if his truck had been equipped with DA5. *Id.*; *see also id.* at 102, ¶ 7.

Mr. Harrington's testing should be excluded. The most significant problem is that it would be ***impossible*** to replicate what Mr. Harrington did in his testing. Furthermore, Mr. Harrington's testing is littered with methodological flaws and does not substantially recreate the accident sequence in a manner that allows him to draw the unreliable conclusion that he reaches.

---

[1] All exhibits referenced herein are identified in, and attached to, the Declaration of Michael J. Kleffner in Support of DTNA's *Daubert* Motion to Exclude Certain Opinions and Testimony of Shawn Harrington. The Exhibit numbers cited herein track the Exhibit numbers in the Declaration.

DTNA's *DAUBERT* MOTION TO EXCLUDE CERTAIN OPINIONS AND TESTIMONY OF SHAWN HARRINGTON

Page | 1

Murphy Armstrong Firm LLP
719 Second Ave., Suite 701
Seattle, WA 98104
(206) 985-9770

## II. Factual Background Relating to DA5

DA5 is an advanced driver assistance system (ADAS) that DTNA offered as a ***standard feature*** on the 2022 Freightliner Cascadia. Like other commercial vehicle manufacturers, DTNA gave its customers a choice to de-select DA5 from the truck specification if the customer desired. That is what occurred here. While DA5 is a suite of safety systems with multiple functionalities (e.g., lane departure warning and adaptive cruise control), the ***only*** DA5 functionality at issue here is its pedestrian detection capability. To detect pedestrians, DA5 utilizes a bumper-mounted radar, a windshield-mounted camera, and a pedestrian-specific algorithm to detect pedestrians crossing the truck's path of travel. If detected, the system will issue a forward collision warning (FCW) alert and, if necessary, initiate automatic emergency braking (AEB).

## III. Factual Background Relating to the Accident

The subject accident involves a tragic collision between Mr. Taya's 2022 Freightliner Cascadia and a pedestrian, Debora Burgess ("Ms. Burgess"). Ms. Burgess was walking through a busy commercial vehicle parking area at a truck stop in Ellensburg, Washington. At the same time, Mr. Taya was driving through the parking area. Neither individual saw the other, and Ms. Burgess was struck and killed. Still shots from accident video are attached at Exhibit 2. As shown, Mr. Taya was driving into sunlight from the setting sun which, according to Mr. Taya, obscured his view. The

DTNA's *DAUBERT* MOTION TO EXCLUDE CERTAIN OPINIONS AND TESTIMONY OF SHAWN HARRINGTON

Page | 2

Murphy Armstrong Firm LLP
719 Second Ave., Suite 701
Seattle, WA 98104
(206) 985-9770

setting sun is relevant here because the DA5 camera can be "blinded" due to sunlight. Indeed, Plaintiffs' expert Petros Ioannou has assumed the DA5 camera **would be** obscured due to sunlight glare. *See* Ioannou Report at 21 (stating, "…it is very likely that the blindness factor was high, and the camera may not have played a significant role in the detection of the pedestrian.").

Importantly, Mr. Taya was not traveling in a straight line through the parking area and, instead, followed a "S curve" path. Mr. Taya's dash cam shows a right-hand turn being made prior to impacting Ms. Burgess, and still shots from another truck's camera show Mr. Taya's left front wheel turned to the right prior to impact. *See* Exhibits 3 (Taya dash cam video)[2] and 4 (still shots of the turning front left wheel). Likewise, illustrations created by Mr. Greg Chard (Plaintiffs' animation expert) are attached at Exhibit 5 and show the reconstructed truck paths from Mr. Chard, Mr. Greg Stephens (DTNA's accident reconstruction expert), and Mr. Harrington. While disputes exist regarding the degree of Mr. Taya's right-hand turn into Ms. Burgess, all experts agree Mr. Taya was making a right-hand turn when he impacted Ms. Burgess. *See* Harrington Report, Ex. 1, at 102, ¶ 1. Mr. Harrington also opines that Ms. Burgess was traveling

---

[2] Mr. Taya's dash cam video is being provided to the Court on a flash drive as a non-scannable exhibit.

DTNA's *DAUBERT* MOTION TO EXCLUDE CERTAIN OPINIONS AND TESTIMONY OF SHAWN HARRINGTON

Page | 3

Murphy Armstrong Firm LLP
719 Second Ave., Suite 701
Seattle, WA 98104
(206) 985-9770

approximately 3.1 mph at impact, and Mr. Taya's truck was traveling 6.8 mph. *Id.*, Ex. 1, at 79.

### IV.    Factual Background Relating to Mr. Harrington's Testing

Mr. Harrington relegated most of the information regarding his testing to Exhibit B of his report. Mr. Harrington performed a series of tests on a 2021 Freightliner Cascadia equipped with DA5 where the moving test truck approached a moving pedestrian target. *See* Harrington Report, Ex. 1, at 112, 114. The purpose of the test was to determine if DA5 would issue a FCW alert and/or activate AEB in response to the pedestrian target. Mr. Harrington's methodology was as follows. "The pedestrian target was pulled using a rope and winch system." *Id.* at 112. The pedestrian target was then "pulled from right to left into the Freightliner's path at an angle of approximately 45 degrees." *Id.* The test truck "began its acceleration when the pedestrian moved past a particular point and followed a marked path[.]" *Id.* at 114. Mr. Harrington then attempted to drive the truck into the crossing pedestrian target: "[t]he goal of the testing was to align the pedestrian target with the centerline of the subject Freightliner at the target impact point." *Id.* Per Mr. Harrington, the "steering wheel was turned to the right during the initiation of the FCW and AEB in all of the tests." *Id.* at 114, Conclusion 6. Four tests were run "with partial cloud cover" and nine tests were driven into "direct sun." *Id.* "The target speed of the pedestrian target was 3 mph." *Id.* Target speeds for

DTNA's *DAUBERT* MOTION TO EXCLUDE CERTAIN OPINIONS AND TESTIMONY OF SHAWN HARRINGTON

Page | 4

Murphy Armstrong Firm LLP
719 Second Ave., Suite 701
Seattle, WA 98104
(206) 985-9770

the truck were "approximately 6 to 8 mph." *Id.* at 114. "[V]arious data acquisition systems" documented the test parameters, such as speeds, steering angle, etc. *Id.* at 112-113.

Appendix C of Mr. Harrington's report (pp. 117 and 118) includes the following tables that document the results of the thirteen test runs on which he relies.

| Test Vehicle | 2021 Freightliner Cascadia |
|---|---|
| Test Date | 12/21/23 – 12/29/2023 |

| | | FCW (CAN) | | | | | | FCW (audio) | | | | | | | FCW (visual) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sun Altitude (degrees) | Avg. Ped Speed (mph) | Speed @ FCW (mph) | Lng. Range @ FCW (ft) | TTC @ FCW (s) | Accel Pedal % @ FCW | Steering Angle @ FCW (degrees) | UTC @ FCW | Speed @ FCW (mph) | Lng. Range @ FCW (ft) | TTC @ FCW (s) | Accel Pedal % @ FCW | Steering Angle @ FCW (degrees) | UTC @ FCW | Time After CAN Signal (s) | Speed @ FCW (mph) | Lng. Range @ FCW (ft) | TTC @ FCW (s) | Accel Pedal % @ FCW | Steering Angle @ FCW (degrees) | UTC @ FCW | Time After Audio Signal (s) |
| 10.83 | 1.78 | 5.84 | 10.03 | 1.18 | 6.4 | -38.065 | 20:24:13.130 | 5.87 | 9.72 | 1.12 | 6 | -37.339 | 20:24:13.165 | 0.03 | 5.14 | 7.59 | 1.02 | 4.4 | -33.878 | 20:24:13.432 | 0.27 |
| 9.9 | 1.67 | 5.7 | 10.55 | 1.25 | 8.8 | -31.674 | 20:28:33.910 | 5.6 | 9.95 | 1.21 | 8.4 | -31.447 | 20:28:33.982 | 0.07 | 4 | 7.19 | 1.21 | 18.8 | -31.859 | 20:28:34.349 | 0.37 |
| 5.27 | 1.37 | 5.52 | 10.88 | 1.33 | 8 | -0.269 | 21:00:34.670 | 5.44 | 10.1 | 1.28 | 7.2 | 0.94 | 21:00:34.766 | 0.1 | 4.65 | 8.09 | 1.18 | 0 | 1.271 | 21:00:35.033 | 0.27 |
| 4.98 | 1.98 | 5.74 | 10.11 | 1.2 | 8.8 | -8.86 | 21:02:38.560 | 5.71 | 10.06 | 1.21 | 8.8 | -8.846 | 21:02:38.567 | 0.01 | 5.11 | 7.34 | 0.98 | 0 | -8.024 | 21:02:38.900 | 0.33 |
| 13.06 | 2.19 | 6.32 | 21.17 | 2.29 | 12.4 | -57.898 | 20:10:31.420 | 6.37 | 19.2 | 2.05 | 9.782 | -66.481 | 20:10:31.632 | 0.21 | 4.31 | 16.64 | 2.55 | 28.4 | -78.965 | 20:10:31.964 | 0.33 |
| 12.53 | 2.42 | 6.61 | 21.34 | 2.2 | 8 | -43.18 | 20:14:27.670 | 6.61 | 21.11 | 2.21 | 7.6 | -43.18 | 20:14:27.700 | 0.03 | 5.85 | 17.97 | 2.1 | 8.655 | -44.718 | 20:14:28.033 | 0.33 |
| 12 | 2.21 | 5.28 | 21.63 | 2.89 | 8.4 | -70.79 | 20:18:38.660 | 5.32 | 21.91 | 2.76 | 9.08 | -70.749 | 20:18:38.632 | -0.03 | 4.84 | 19.59 | 2.84 | 10.909 | -71.643 | 20:18:38.933 | 0.3 |
| 9.66 | 2.78 | 6.79 | 21.65 | 2.16 | 11.2 | -33.61 | 20:35:00.310 | 6.75 | 22.01 | 2.23 | 11.2 | -33.759 | 20:35:00.265 | -0.05 | 6.5 | 18.41 | 1.91 | 11.2 | -31.923 | 20:35:00.632 | 0.37 |
| 8.23 | 2.83 | 6.55 | 7.48 | 0.82 | 0 | -52.046 | 20:45:33.840 | 6.89 | 7.88 | 0.76 | 0 | -52.059 | 20:45:33.794 | -0.05 | 6.46 | 5.06 | 0.53 | 0 | -50.029 | 20:45:34.096 | 0.3 |
| 7.8 | 2.69 | 6.47 | 10.15 | 1.1 | 7.2 | -23.083 | 20:48:38.040 | 6.51 | 10.49 | 1.05 | 7.6 | -23.106 | 20:48:37.999 | -0.04 | 6.25 | 10.29 | 1.13 | 6.4 | -23.321 | 20:48:38.298 | 0.3 |
| 6.92 | 2.91 | 7.82 | 14.56 | 1.21 | 7.2 | -26.295 | 20:54:08.010 | 7.89 | 14.31 | 1.26 | 4 | -27.14 | 20:54:08.033 | 0.02 | 6.29 | 10.4 | 1.11 | 0 | -38.239 | 20:54:08.399 | 0.37 |
| 6.03 | 2.8 | 6.41 | 8.31 | 0.88 | 0 | -46.986 | 21:00:37.740 | 6.45 | 8.37 | 0.88 | 0 | -46.83 | 21:00:37.734 | -0.01 | 5.61 | 5.77 | 0.69 | 0 | -55.835 | 21:00:38.033 | 0.3 |
| 5.74 | 3.21 | 6.85 | 9.53 | 0.99 | 8.8 | -64.421 | 21:02:50.850 | 6.86 | 9.68 | 0.96 | 8.8 | -63.244 | 21:02:50.833 | -0.02 | 6.19 | 6.1 | 0.67 | 2 | -82.384 | 21:02:51.200 | 0.37 |

| AEB | | | | | | | AEB Phase Analysis | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Speed @ AEB (mph) | Lng. Range @ AEB (ft) | TTC @ AEB (s) | Accel. Pedal % @ AEB | Steering Angle @ AEB (degrees) | UTC @ AEB | Time After FCW (s) | Avg. Decel. (g) | Decel Plateau (g) | Peak Decel. (g) | Speed Lost (mph) | Phase Length (s) | Lng. Range @ Stop (ft) | Solution Type |
| 5.66 | 8.93 | 1.08 | 5.6 | -35.81 | 20:24:13.260 | 0.13 | -0.31 | -0.41 | -0.43 | -5.19 | 0.68 | 5.56 | 4 |
| 5.54 | 9.32 | 1.15 | 8.4 | -31.025 | 20:28:34.060 | 0.15 | -0.27 | -0.33 | -0.38 | -5.14 | 0.76 | 5.7 | 3 |
| 5.56 | 9.74 | 1.19 | 6.8 | 1.205 | 21:00:34.810 | 0.14 | -0.31 | -0.42 | -0.43 | -5.29 | 0.65 | 6.55 | 4 |
| 5.69 | 8.78 | 1.05 | 7.2 | -8.695 | 21:02:38.720 | 0.16 | -0.31 | -0.41 | -0.42 | -5.4 | 0.7 | 5.33 | 4 |
| 6.22 | 19.69 | 2.16 | 10.4 | -64.117 | 20:10:31.580 | 0.16 | -0.23 | -0.27 | -0.3 | -5.77 | 0.93 | 14.7 | 4 |
| 6.68 | 19.94 | 2.03 | 7.6 | -43.235 | 20:14:27.820 | 0.15 | -0.2 | -0.26 | -0.3 | -5.24 | 0.87 | 12.04 | 4 |
| 5.41 | 20.87 | 2.63 | 8.4 | -70.9 | 20:18:38.762 | 0.1 | -0.23 | -0.29 | -0.3 | -4.95 | 0.77 | 17.08 | 4 |
| 6.64 | 12.85 | 1.32 | 10.8 | -36.418 | 20:35:01.205 | 0.9 | -0.28 | -0.32 | -0.61 | -6.28 | 0.84 | 7.39 | 3 |
| 6.2 | 6.22 | 0.68 | 0 | -51.897 | 20:45:33.973 | 0.13 | -0.38 | -0.49 | -0.55 | -5.71 | 0.59 | 2.53 | 3 |
| 6.04 | 8.9 | 1 | 6.8 | -23.05 | 20:48:38.176 | 0.14 | -0.23 | -0.28 | -0.31 | -5.6 | 0.96 | 6.2 | 3 |
| 7.44 | 13.18 | 1.22 | 2.4 | -29.777 | 20:54:08.134 | 0.12 | -0.24 | -0.28 | -0.33 | -7.03 | 1.19 | 6.33 | 3 |
| 6.47 | 8.31 | 0.88 | 0 | -47.03 | 21:00:37.740 | 0 | -0.23 | -0.32 | -0.33 | -6.02 | 0.99 | 2.79 | 3 |
| 6.75 | 8.24 | 0.83 | 7.6 | -71.057 | 21:02:50.975 | 0.13 | -0.27 | -0.32 | -0.42 | -6.43 | 0.95 | 2.76 | 3 |

Although not stated directly in his report, Mr. Harrington actually performed ***twenty-four*** test runs, but he excluded eleven test runs for various reasons, such as the test dummy falling over, the pedestrian dummy losing its leg, and purportedly "mistimed" pedestrian crossing. *Id.* at 114 (emphasis added); *see also* Test Notes for 12/21/23,

DTNA's *DAUBERT* MOTION TO EXCLUDE CERTAIN OPINIONS AND TESTIMONY OF SHAWN HARRINGTON

Page | 5

Murphy Armstrong Firm LLP
719 Second Ave., Suite 701
Seattle, WA 98104
(206) 985-9770

attached at Exhibit 6 (documenting seven "no test" results on December 21). In fact, because Mr. Harrington could not get his test dummy to remain upright, he enlisted an assistant to walk "alongside the pedestrian target at the start of its travel to steady it as it accelerated." *See* Harrington Report, Ex. 1. at 114. Per Mr. Harrington, FCW and AEB initiated in the thirteen tests he deemed valid, but the timing of the alerts differed significantly depending on "cloud cover" (four tests) and "direct sun scenarios." *Id.* at 116. The audible FCW issued at an average time-to-collision [TTC] of 1.1 seconds in the direct sun scenario; with cloud cover, the FCW issued at an average TTC of 2.39 seconds. *Id.* at 116, Conclusion ¶ 1. In the same scenarios, AEB initiated at an average TTC of 1.00 second (direct sun) and 2.04 seconds (cloud cover). *Id.* at 116, Concl. ¶ 3.

DTNA's experts, Dr. Michelle Kuykendal and Mr. Ryan Harrington, reviewed Mr. Harrington's test data. Their review revealed significant flaws in Mr. Harrington's testing, most of which are not discernable from his report:

- Mr. Harrington's equipment provided unreliable positional data for the test truck and show it driving ***through landscaping*** and making ***impossible*** lateral movements. Kuykendal Report at 12-13, 18-21, 79-80, attached at Exhibit 7.

DTNA's *DAUBERT* MOTION TO EXCLUDE CERTAIN OPINIONS AND TESTIMONY OF SHAWN HARRINGTON

Page | 6

Murphy Armstrong Firm LLP
719 Second Ave., Suite 701
Seattle, WA 98104
(206) 985-9770

- Mr. Harrington's test video showed significant inconsistencies in the paths of travel taken by the test truck and pedestrian dummy. *Id.* at 14-21, 79-80; *see also* Harrington Test Video, Exhibit 8.[3]

- Mr. Harrington's test path for the truck was "nearly straight" and did not incorporate a right-hand turn similar to that taken by Mr. Taya. *See* Kuykendal Report, Ex. 7, at 6, 79-80; *see also* Test Video, Exhibit 8.

- The path of the pedestrian test dummy varied and entered the test truck's path much ***earlier than*** Ms. Burgess entered the subject truck's path and "over a range of 10.7 ft. – 23.2 ft." *See* Kuykendal Report, Ex. 7, at 7; *see also id.* at 8-10, 79-80.

- Mr. Harrington introduced two additional pedestrian "targets" into his tests – i.e., the test dummy's walking chaperone and the sled operator. *Id.* at 14-15, 70.

In summary, after excluding eleven tests (***including*** tests where the pedestrian crossed the truck's path and FCW ***was not issued***), Mr. Harrington relies on thirteen tests to opine that this tragedy would not have occurred if Mr. Taya's truck had been equipped with DA5. The fundamental problem with Mr. Harrington's testing, however, is that

---

[3] Mr. Harrington's test video is provided on a flash drive as a non-scannable exhibit. Exhibit 8 contains three folders: (a) test runs on December 21, 2023; (b) test runs on December 29, 2023; and (c) tests that Mr. Harrington deemed "NO TEST."

DTNA's *DAUBERT* MOTION TO EXCLUDE CERTAIN OPINIONS AND TESTIMONY OF SHAWN HARRINGTON

Page | 7

Murphy Armstrong Firm LLP
719 Second Ave., Suite 701
Seattle, WA 98104
(206) 985-9770

1  each test run differed significantly from any other and deviated from the circumstances

2  of the subject accident in material ways. Thus, it would be impossible to replicate Mr.

3  Harrington's testing given the variability of multiple aspects of the testing. And, even

4  if one could replicate it (highly unlikely), the test differences are so significant from the

5  accident sequence that reliance on Mr. Harrington's testing would be misplaced and

6  render any conclusions unreliable.

### V.     The Law

Under Fed. R. Evid. 702, an expert may testify regarding opinions if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based upon sufficient facts or data; (c) **the testimony is the product of reliable principles and methods**; and (d) the expert has reliably applied the principles and methods to the facts of the case. *See* Fed. R. Evid. 702 (emphasis added). The proponent of the expert has the burden to prove the proffered testimony "more likely than not" satisfies each element of Rule 702. *See id.*

Rule 702 "embodies" the requirements that expert testimony be relevant and reliable. *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007). The test for reliability "is not the correctness of the expert's conclusions but the soundness of his methodology." *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1318 (9th Cir.

DTNA's *DAUBERT* MOTION TO EXCLUDE CERTAIN OPINIONS AND TESTIMONY OF SHAWN HARRINGTON

Page | 8

Murphy Armstrong Firm LLP
719 Second Ave., Suite 701
Seattle, WA 98104
(206) 985-9770

1995) ("*Daubert II*"). A "key question" to determine the reliability of expert testimony is whether the expert's theory "can be and has been tested." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593 (1993) ("*Daubert I*"). This "testability factor" requires that "someone else using the same data and methods … be able to replicate the result[s]." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1047 (9th Cir. 2014). If an expert's methodologies are not sufficiently replicable, this "**weighs heavily against** admissibility under *Daubert*." *United States v. Adams*, 444 F. Supp. 3d 1248, 1264 (D. Or. 2020) (emphasis added). *See, e.g.*, *In re Incretin-Based Therapies Prods. Liab. Litig.*, No. 21-55342, 2022 WL 898595, at *1 (9th Cir. 2022) (affirming exclusion where expert failed to provide a "sufficient explanation for their methodology such that '[s]omeone else using the data [would] be able to replicate the result[s]'"), *quoting City of Pomona*, 750 F.3d at 1047; *United States v. Cloud*, 576 F. Supp. 3d 827, 841 (E.D. Wa. 2021) (noting the methodology was "not entirely replicable" which "weighs against admissibility under *Daubert*."); *See also e.g.*, *Zenith Elecs. Corp.*, 395 F.3d 416, 219 (7th Cir. 2005); *In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-MN-02972-JFA, 2024 WL 2155221, at *9 (D.S.C. 2024); *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 644 F. Supp. 3d 1075, 1135 (S.D. Fl. 2022); *Snoznik v. Jeld-Wen, Inc.*, No. 1:09cv42, 2010 WL 1924483, at *13 (W.D.N.C. 2010).

DTNA's *DAUBERT* MOTION TO EXCLUDE CERTAIN OPINIONS AND TESTIMONY OF SHAWN HARRINGTON

Page | 9

Murphy Armstrong Firm LLP
719 Second Ave., Suite 701
Seattle, WA 98104
(206) 985-9770

## VI. Mr. Harrington's Testing is Unreliable and Cannot be Replicated

### 1. Poorly Controlled and Variable Test Truck Paths

Test engineers utilize positional GPS data on test equipment because, after the tests are run, those engineers must evaluate **what happened – and with precision.** Without accurate and reliable positional data, test engineers must resort to video and/or photographic review of the tests. In other words, they must "eyeball it." Here, the GPS data obtained for Mr. Harrington's test truck is obviously inaccurate. In her analysis, Dr. Kuykendal plotted the location of Mr. Harrington's test truck in the test runs. *See* Kuykendal Report, Ex. 7, at 28, Figure 7. Per the data, the truck makes lateral "hops" or "sidesteps" which are impossible for a truck make. Some of the paths also traverse a landscaping island. Obviously, this did not happen, and the GPS data is clearly wrong. Thus, it would be exceptionally difficult, if not impossible, to recreate the path taken by Mr. Harrington's test truck because inadequate positional data exists to do so.

Further, Mr. Harrington introduced significant variability in the truck path, such that it renders any conclusions unreliable. *See* Kuykendal Report, Ex. 7, at 16-18, 79-80 (discussing vehicle path). Indeed, the endpoint of Mr. Harrington's test paths "exhibit a variance in distance of up to 20.8 feet." *Id.* at 16. In addition, Mr. Harrington did not use consistent test paths for his test truck; rather, "entirely different approaches" were taken from Day 1 to Day 2 of his tests. *Id.* at 17.

DTNA's *DAUBERT* MOTION TO EXCLUDE CERTAIN OPINIONS AND TESTIMONY OF SHAWN HARRINGTON

Page | 10

Murphy Armstrong Firm LLP
719 Second Ave., Suite 701
Seattle, WA 98104
(206) 985-9770

Perhaps most significantly, the path taken by Mr. Harrington's test truck was essentially straight. *Id.* at 6, 79. While Mr. Harrington claims "[t]he steering wheel was turned to the right" at the end of his test runs, it had a negligible (if any) effect on the actual path of the test truck. *See* Harrington Report, Ex. 1, at 116; *compare to* Kuykendal Report, Ex. 7 at 18; Taya Dash Cam, Exhibit 3; and Harrington Test Video, Exhibit 8. This is a **significant difference** from the accident sequence itself, where Mr. Taya initiated a right-hand turn prior to striking Ms. Burgess. *See* Taya dash cam video, Ex. 3, and still shots of the front left wheel, Ex. 4. Indeed, DTNA's testing established that this late right-hand turn prevented DA5 from initiating FCW and AEB. *See* Kuykendal Report, Ex. 7, at 64. Nevertheless, Mr. Harrington's testing did not include an incident-relevant right-hand turn into the pedestrian target.

### 2. Poorly Controlled and Variable Pedestrian Paths

The path taken by Mr. Harrington's pedestrian target was also poorly controlled and highly variable. *Id.* at 10-16. Mr. Harrington invalidated several tests because the pedestrian target toppled, and he had to recruit a human chaperone to walk alongside it. He also applied wax to the parking lot surface to assist the pedestrian target in traversing the surface. Once he could keep the pedestrian target upright, Mr. Harrington recruited another assistant to operate a sled that pulled the pedestrian target via rope attached to a drill. Figures 5 and 33 of Kuykendal's Report show the drill operator and the human

DTNA's *DAUBERT* MOTION TO EXCLUDE CERTAIN OPINIONS AND TESTIMONY OF SHAWN HARRINGTON

Page | 11

Murphy Armstrong Firm LLP
719 Second Ave., Suite 701
Seattle, WA 98104
(206) 985-9770

chaperone. *Id.* at 15, 70. Thus Mr. Harrington's test setup introduced three human targets that the DA5 radar and camera may track. In the subject accident, however, only one human (Ms. Burgess) would have been tracked by a hypothetical DA5 system. Thus, it is unknown how the DA5 system in Mr. Harrington's test truck would have responded if only one human pedestrian or target was included in the testing.

Further, substantial variability existed with the pedestrian path. Dr. Kuykendal plotted the path of Mr. Harrington's pedestrian dummy from data files produced by Mr. Harrington. *Id.* at 16, Figure 6. Figure 6 looks like a child took a red crayon and scribbled on an aerial photo of Mr. Harrington's test site. To put this red scribble into perspective, the test paths of the pedestrian target show "a variance of up to about 22 feet." *Id.* at 15. Simply put, Mr. Harrington's pedestrian path differed from run to run.

Lastly, and importantly, Mr. Harrington's pedestrian target entered the test truck's path ***much earlier*** than Ms. Burgess entered the subject truck's path. Specifically, he had the pedestrian target enter the test truck's path of travel at a range of 10.7 feet to 23.2 feet. *Id.* at 7, Figure 1. This wide range further illustrates the poor control and unreliability of his truck and pedestrian target paths. And ***all points*** within this wide range occur beyond (i.e., farther away from) the point that Ms. Burgess entered the subject truck's path. Thus, whether intentional or due to poor control of his test path, Mr. Harrington gave the DA5 system in the test truck ***more time*** to react. This

DTNA's *DAUBERT* MOTION TO EXCLUDE CERTAIN OPINIONS AND TESTIMONY OF SHAWN HARRINGTON

Page | 12

Murphy Armstrong Firm LLP
719 Second Ave., Suite 701
Seattle, WA 98104
(206) 985-9770

fact, coupled with Mr. Harrington's straight-path approach, increased the chances that Mr. Harrington would get the result he wanted.

### 3. Other Test Aspects Illustrate Inconsistency

The two tables in Appendix C to Mr. Harrington's report show his test results and the parameters of his thirteen "valid" test runs. While Mr. Harrington stated the target speeds for his test truck and pedestrian target were, respectively, 6-8 mph and 3 mph, his actual speeds varied from the targets. *See* Harrington Report, at 117-118 (showing average pedestrian speed and truck speeds at FCW and AEB). This indicates several things. First, with regard to the test truck, Mr. Harrington missed the target speed on several occasions. Second, the speeds that fell within the target range were almost always much closer to 6 mph than 8 mph. Third, the test truck's speeds slowed significantly from FCW audio to FCW visual, and then increase to the AEB phase. While DTNA understands that some variability will occur with a human driver, these variances illustrate inadequate control over the test conditions and would be impossible to replicate given the variability.

The pedestrian speeds exhibit similar variability and, with ***one exception***, all fall below the target speed of 3 mph. Specifically, the average pedestrian speed ranged from 1.67 mph to 3.21 mph. *Id.* at 117-118. With the exception of the single run at 3.21 mph, ***all pedestrian target speeds were below 3 mph.*** Furthermore, while the pedestrian target

DTNA's *DAUBERT* MOTION TO EXCLUDE CERTAIN OPINIONS AND TESTIMONY OF SHAWN HARRINGTON

Page | 13

Murphy Armstrong Firm LLP
719 Second Ave., Suite 701
Seattle, WA 98104
(206) 985-9770

1  speed could have been controlled with different equipment, Mr. Harrington used a
2  roughshod sled operated by a power drill. The speed variances are the result.
3  Importantly, by *reducing* the test vehicle and pedestrian speeds, Mr. Harrington
4  *increased* the chances that he would obtain FCW and/or AEB.

5  Appendix C also demonstrates other test variables that render Mr. Harrington's
6  tests unreliable and incapable of duplication. For instance, the "time to collision" (TTC)
7  at FCW audio ranges from under 1 second (0.76 seconds) to almost 3 seconds (2.76
8  seconds). *Id. at* 117 ("TTC @ FCW (s)"). This wide range is likely the result of
9  inconsistent test truck and pedestrian paths, as explained above. Likewise, the steering
10 angle at FCW audio varies from a positive 0.94 (**no right turn**) to a negative 70.749,
11 with steering angles in the negative 30s, 40s, 50s, and 60s. *Id.* ("Steering angle @ FCW
12 (degrees)"). The accelerator pedal percentage is also highly variable, ranging from 0 to
13 11.2. *Id.* ("Accel Pedal % @ FCW"). Lastly, four of Mr. Harrington's runs were with
14 partial cloud cover – unlike at the time of the subject accident. So, extreme
15 inconsistency and variability exists over the totality of his test sequence.

16 **4. Summary and Conclusion**

17 Tragically, the subject accident involves two intersecting objects: a truck driven
18 by Sahil Taya and a pedestrian walking through a busy parking area. In the accident,
19 those *two* objects had *two* paths of travel that intersected. Mr. Harrington's testing
20
21 DTNA's *DAUBERT* MOTION TO EXCLUDE CERTAIN OPINIONS AND TESTIMONY OF SHAWN HARRINGTON

Page | 14

Murphy Armstrong Firm LLP
719 Second Ave., Suite 701
Seattle, WA 98104
(206) 985-9770

1 resembles nothing of the sort. The paths of both test objects – the truck and pedestrian dummy – show significant variability from the actual event and test-to-test. And, in the case of the truck path, Mr. Harrington used a straight-path approach, rather than incorporating a subject-relevant right-hand turn into his testing. But path isn't the only problem. The speeds of both test objects vary significantly, the steering angle varies widely, as does the accelerator pedal percentage. Add to the mix that Mr. Harrington used a human chaperone (out of necessity) and human sled operator (out of choice), both of which added two more human "targets" to the scenario than what existed in the subject accident. Lastly, cloud cover existed in four scenarios, even though the subject accident occurred in 100% direct sun.

**It would be impossible to replicate Mr. Harrington's testing.** *See* Kuykendal Report, Ex. 7, at 79 (stating, "…no person, not even Mr. Harrington himself, could use the data produced by Mr. Harrington to evaluate what Mr. Harrington ***actually did in his testing.***") (emphasis added). While Mr. Harrington may disagree for self-serving reasons, the proof is in the data - or lack thereof. As such, *Daubert* requires that Mr. Harrington's testing be excluded.

DTNA's *DAUBERT* MOTION TO EXCLUDE CERTAIN OPINIONS AND TESTIMONY OF SHAWN HARRINGTON

Page | 15

Murphy Armstrong Firm LLP
719 Second Ave., Suite 701
Seattle, WA 98104
(206) 985-9770

DATED this 7th day of February, 2025.

                        SHOOK, HARDY & BACON L.L.P.

                        */s/ Michael J. Kleffner*
                        Michael J. Kleffner (*pro hac vice*)
                        Jennifer J. Artman (*pro hac vice*)
                        2555 Grand Boulevard
                        Kansas City, Missouri  64108-2613
                        Telephone:  816-474-6550
                        Facsimile:   816-421-5547
                        mkleffner@shb.com
                        jartman@shb.com

                        and

                        MURPHY ARMSTRONG FIRM LLP

                        */s/ James P. Murphy*
                        James P. Murphy (WSBA #18125)
                        Brian Armstrong (WSBA #31974)
                        719 Second Avenue, Suite 701
                        Seattle, WA 98104
                        Phone: 206-985-9770;Fax 206-985-9790
                        jpm@maflegal.com
                        bca@maflegal.com


                        *Attorneys for Defendant*
                        *Daimler Truck North America LLC*

DTNA's *DAUBERT* MOTION TO EXCLUDE CERTAIN OPINIONS AND TESTIMONY OF SHAWN HARRINGTON

Page | 16

Murphy Armstrong Firm LLP
719 Second Ave., Suite 701
Seattle, WA 98104
(206) 985-9770

# CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification to the following counsel of record:

| | |
|---|---|
| Kevin Coluccio, WSBA #16245<br>Coluccio Law<br>2120 1st Avenue North, Suite 201<br>Seattle, Washington 98109<br>T/206.826.8200; F/206.673.8286<br>kc@coluccio-law.com<br><br>Kenneth R. Friedman, WSBA #17148<br>Lincoln D. Sieler, WSBA #20774<br>Richard H. Friedman, WSBA #30626<br>Friedman Rubin PLLP<br>1126 Highland Avenue<br>Bremerton, Washington 98337<br>T/360.782.4300; F/360.782.4358<br>rfriedman@friedmanrubin.com<br>kfriedman@friedmanrubin.com<br>lsieler@friedmanrubin.com<br><br>*Attorneys for Plaintiffs Stephen Burgess, Bruce Wolf and Debora M. Burgess* | Skyler P. Urban, WSBA #58761<br>Francis S. Floyd, WSBA #10642<br>Floyd, Pflueger & Ringer P.S.<br>3101 Western Ave, Suite 400<br>Seattle, Washington 98121-3017<br>T/206.441.4455; F/206.441.8484<br>ffloyd@floyd-ringer.com<br>surban@floyd-ringer.com<br><br>*Attorneys for Defendants HTS Logistics and Sahil Taya* |

DATED at Kansas City, Missouri this 7th day of February, 2025.

By: */s/ Michael J. Kleffner*
Michael J. Kleffner
*Attorney for Defendant Daimler Truck North America LLC*

DTNA's *DAUBERT* MOTION TO EXCLUDE CERTAIN OPINIONS AND TESTIMONY OF SHAWN HARRINGTON

Page | 17

Murphy Armstrong Firm LLP
719 Second Ave., Suite 701
Seattle, WA 98104
(206) 985-9770